IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SAPPINGTON GARDEN, LLC and | § | |
| CELTIC REALTY ACQUISITION, LLC, | § | |
|     Plaintiffs | § | |
| | § | |
| V. | § | Civil Action No. _____ |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| SECRETARY OF THE TREASURY | § | |
| STEVEN MNUCHIN and SECRETARY | § | |
| OF HOUSING AND URBAN | § | |
| DEVELOPMENT DR. BENJAMIN | § | |
| CARSON, in their official capacities, | § | |
|     Defendants | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE

COME NOW Plaintiffs Sappington Garden, LLC ("Sappington") and Celtic Realty Acquisition, LLC ("Celtic"), and file this Original Complaint for Declaratory and Injunctive Relief seeking a declaratory judgment that Section 4024 of the CARES Act that purports to impose a moratorium on eviction proceedings cannot be legally enforced because no entity or official was appointed to enforce the moratorium, it is in violation of multiple provisions of the U.S. and Texas Constitutions, and is a direct federal incursion into the judicial branch of the State of Texas, and in support thereof would show as follows.

**I.   SUMMARY**

1. **Plaintiffs seek immediate injunctive relief only to allow them to provide notice** of an intent to file eviction proceedings in state court to a very few tenants that refuse to communicate or cooperate with Plaintiffs' efforts to extend rent relief with a payment plan after

1

the economic crisis caused by the pandemic has passed.

2.  In its rush to draft and pass legislation to provide an enormous economic stimulus to the U.S. economy during the COVID-19 pandemic, Congress included two very similar, overlapping moratorium provisions that purportedly prohibit property owners from taking any steps to initiate eviction proceedings against residential tenants for failure to pay rent or fees. One of these moratorium provisions, in Section 4024 of the CARES Act, applies not only to owners that receive federal funds through subsidized housing programs, but to any owner that happens to have a mortgage that is backed by a federal entity. The moratorium provisions in the CARES Act do not include any enforcement provisions, and do not assign enforcement or oversight to any particular official or agency. The moratorium does interfere with the contract rights of owners through both their existing mortgages and leases, with their access to state courts, and their rights to due process and equal protection of the laws.

3.  After the Court has had an opportunity to fully hear the case, Plaintiffs seek declarations and injunctive relief (if necessary) prohibiting enforcement of Section 4024 of the CARES Act.

## II.     PARTIES

4.  Plaintiff Sappington Garden, LLC is a Texas limited liability corporation with its principal place of business in Tarrant County, Texas. Sappington Garden owns and operates an apartment complex in Fort Worth, Texas. The apartment complex primarily attracts blue collar and service workers.

5.  Plaintiff Celtic Realty Acquisition, LLC is a Texas limited liability corporation with its principal place of business in Montgomery County, Texas. Celtic owns and operates an apartment complex in Conroe, Texas. The apartment complex primarily attracts blue collar and

2

service workers.

6. The United States of America is named as a Defendant as this is a Constitutional challenge to a statute enacted by Congress and signed by the President. Service may be effected by serving Attorney General William Barr at the Department of Justice, 950 Pennsylvania Ave. NW, Washington D.C. 20530.

7. Defendant Steven Mnuchin is the Secretary of the Treasury for the United States. He may be served with process by serving him at the Department of the Treasury, 1500 Pennsylvania Ave. NW, Washington D.C. 20220. He is named in his official capacity as the official defined as "the Secretary" with primary authority over Title IV of the CARES Act, designated the Coronavirus Economic Stabilization Act of 2020.

8. Defendant Dr. Benjamin Carson is the Secretary of Housing and Urban Development for the United States. He may be served with process by serving him at the Department of Housing and Urban Development, 451 7th Street SW, Washington D.C. 20410. He is named in his official capacity as another official given authority over Title IV of the CARES Act, designated the Coronavirus Economic Stabilization Act of 2020.

### III.    JURISDICTION AND VENUE

9. This action involves a direct challenge to the constitutionality of a federal statute. Therefore, this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Additionally, as an action for a Declaratory Judgment, this action arises under 28 U.S.C. § 2201.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Sappington is located within this District, its real property in question is located within this District, and a substantial part of the events or omissions giving rise to the claims asserted

herein occurred within this District.

## IV. FACTUAL BACKGROUND

### A. History of CARES Act

11. As the United States and the world responded to the COVID-19 pandemic by imposing stay-at-home orders and prohibiting virtually all economic activity, there was a recognition that unless some form of economic relief was provided to those unable to work or run businesses due solely to public health orders, the economic shutdown could produce dire consequences for individuals and significant damage to the U.S. economy as a whole. The legislative response from Congress was the hastily-drafted Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). This mammoth piece of emergency legislation was signed into law on March 27, 2020 – barely two months after it was initially introduced as a House bill. It was the third coronavirus relief bill passed by Congress in as many weeks, and at approximately $2.2 trillion is the largest economic stimulus package in the history of the United States.

12. The CARES Act is a sprawling collection of several different relief bills that totals over 300 pages. Subtitle A of Title IV of the CARES Act is referred to as the Coronavirus Economic Stabilization Act of 2020. This Subtitle contains two overlapping but different provisions imposing a moratorium on residential evictions.

13. Section 4023 of the CARES Act provides mortgage relief to owners of multi-family housing in the form of an ability to request forbearance on any federally-backed multi-family mortgage. In exchange, the owner cannot charge late fees or evict any residential tenants for failure to pay rent or fees during the period of the forbearance. The owner may end the forbearance at any time, thus releasing the eviction moratorium.

14. By contrast, Section 4024 imposes a blanket eviction moratorium on any residential property that participates in a federal housing program or is financed by a federally-backed mortgage. Under this provision, owners may not provide notice or begin any eviction proceeding against a tenant for failure to pay rent or fees under any circumstances. There is no forbearance or other relief offered to the owner in exchange for this moratorium, and the owner has no ability to end the moratorium. This moratorium purportedly exists through July 25, 2020, but also imposes a thirty-day notice requirement that does not exist under Texas law, thus extending the functional moratorium to prevent filing any eviction proceeding to August 25, 2020.

15. The Department of Housing and Urban Development has published written guidance interpreting the Section 4024 moratorium. In version 4 of its "COVID-19 FAQs for Public Housing Agencies" dated May 29, 2020, HUD wrote in paragraph EM13 that the provision in Section 4024 of the CARES Act imposing an eviction moratorium based on receipt of Section 8 housing vouchers "only applies to the voucher holder" because "HUD does not have the authority to extend jurisdiction over unassisted tenants or the property." The HUD guidance further explains that if the property is subject to a federally-backed mortgage, then the moratorium covers the entire property.

16. Virtually every section of Subtitle A of Title IV of the CARES Act is enforced or overseen by the Secretary of the Treasury, with some responsibility also falling to the HUD Secretary. Unlike the other sections, Sections 4023 and 4024 do not include any provisions for oversight or enforcement. The Act is silent as to what happens if an owner begins eviction proceedings. There is no reporting or oversight mechanism. The moratorium provisions do not fall within the oversight powers of the special Inspector General created to oversee the

expenditures authorized by the CARES Act. Sections 4023 and 4024 simply declare that there is a moratorium, and in the case of Section 4024 there is no benefit offered to an owner in exchange and no choice to avoid the moratorium.[1]

17. Since March 27, much more has been learned about COVID-19 and what steps can be taken to reduce the risk of transmission. Most states and localities have to greater or lesser extent reduced or removed the restrictions imposed by their public health orders and business activity has begun to resume. Texas Governor Greg Abbott has set out a detailed Report to Open Texas, with regularly updated checklists of health measures to be implemented for most of the businesses and other activities in Texas to re-open under sensible restrictions and safeguards. Texas has lifted its stay-at-home orders and reopened most business activity by adopting prudent industry-specific health safety protocols.

### B.   Plaintiff Sappington Garden

18. Sappington Garden, LLC was incorporated in the state of Texas in 2019. It owns and operates an apartment complex in Fort Worth, Texas called Sappington Garden, formerly known as Chalk Garden. It has sixteen apartments of varying sizes at price points that attract many blue collar and hourly workers and their families. Sappington Garden, LLC is made up of over a dozen small investors, most of which have invested $25,000 or less. By working together, this group of small investors were able to purchase an apartment complex badly in need of saving.

19. When they purchased it, the former Chalk Garden apartments had been in need of renovation and maintenance for years. There were even units with persistent bed bug infestation. The Sappington Garden group pooled their resources and began renovating the complex –

---

[1] Since most federally-backed mortgages include prepayment penalties, even if an owner had the financial means extinguishing the mortgage to avoid the moratorium is not a practical option.

beginning with complete eradication of the bed bugs. When the pandemic struck and stopped all work, they had already renovated a quarter of the units in a matter of months. They caught up on all of the overdue maintenance, and the newly christened Sappington Garden apartments now has a 100% lease renewal rate. The group of small investors took a dying apartment complex and is well on the way to creating a community.

20.     Plaintiff Sappington has been proactive in reaching out to its tenants during the COVID-19 pandemic. All late fees have been waived across the board. Plaintiff Sappington has been working with its tenants that have been financial impacted during the pandemic. Tenants have been allowed to pay partial rent as they are able and have been given installment payment plans for the balance that will not begin until the tenants' income is restored. There are a few tenants that have refused to communicate with the management office, have refused to pay or delayed paying any rent, and refused to provide any explanation. With only sixteen units, even a few tenants not paying rent can create significant financial hardship for the complex and its ability to continue providing for its other tenants.

21.     Plaintiff Sappington does not currently participate in any of the federal housing programs listed in Section 4024(a)(2)(A) of the CARES Act. It does not receive federal tax dollars or tax credits to provide subsidized rent. Plaintiff Sappington has not requested mortgage forbearance under Section 4023 of the CARES Act. The only basis for imposing an eviction moratorium on Plaintiff Sappington under the CARES Act is its federally-backed mortgage. Plaintiff Sappington has one tenant who has recently applied for assistance with rent through a Section 8 housing program. Plaintiff Sappington is inclined to support the tenant's application for Section 8 assistance, but is concerned about the Section 4024 moratorium. If this Court were to issue a declaration confirming the HUD guidance that a moratorium based on receipt of

Section 8 vouchers only applies to the voucher holder, it would resolve the uncertainty.

22. Plaintiff Sappington is unable to even provide notice of its intention to begin eviction proceedings against the few tenants that appear to be taking advantage of the pandemic to avoid paying rent. Section 4024(c)(2) of the Act specifically prohibits even sending notice during the purported moratorium. Even though there is no oversight or enforcement in the CARES Act for this moratorium provision, the Texas Supreme Court has specified in its Fifteenth Emergency Order Regarding the COVID-19 State of Disaster that no eviction proceeding may be filed in Texas unless the pleading certifies that "the premises are not subject to the moratorium on evictions imposed by Section 4024 of the CARES Act." Thus, as a direct result of Section 4024, Plaintiff Sappington has been denied access to the court system in the state of Texas.

### C. Plaintiff Celtic Realty Acquisition

23. Celtic Realty Acquisition, LLC was incorporated under the laws of Texas in 2014. It owns and operates an award-winning apartment complex in Conroe, Texas called The Grove on Gladstell. It has 52 units and offers one- and two-bedroom apartments at a price point that attracts many blue collar and hourly workers. Celtic Realty Acquisition is another group of under a dozen small individual investors.

24. When they purchased The Grove in August of 2014, the complex was not only in bad shape – it was in foreclosure. The Celtic Realty investors had to put almost as much of their money into rehabilitating the complex as they did to purchase it. In three years of investment and hard work, they transformed The Grove on Gladstell from an eyesore in foreclosure to the 2017 Property of the Year as awarded by both the Houston Apartment Association and the National Apartment Association. Such an amazing transformation was the product not of

dispassionate investors, but of a group of friends and family that wanted to contribute to the Conroe and Greater Houston community the kind of quality housing workers deserve.

25.     Plaintiff Celtic is committed to the apartment community it has rehabilitated and fostered, and has been communicating with its tenants during the COVID-19 pandemic. Plaintiff Celtic adopted a "Pay Us When You Get Paid" program and has offered rent forbearance and waiver of late fees to any tenant financially impacted by the pandemic, so long as they communicate with the management office, agree to pay when they are able, and then make rent payments if they return to work or receive unemployment benefits or stimulus funds. There are two tenants that have refused to communicate with the management office and have refused to pay rent. One has effused without explanation to apply for unemployment benefits or any other of assistance, despite referrals from Plaintiff Celtic, after being furloughed. The other claims to have been denied unemployment benefits and that no stimulus check was received, but refused requests for further explanation thus leaving Plaintiff Celtic unable to assist.

26.     Plaintiff Celtic has two residents that receive rent assistance through a Section 8 voucher program. These two tenants are current on their rent and are not at risk for eviction. Based upon the guidance document published by HUD, the other 50 units at the Grove on Gladstell are only subject to an eviction moratorium due to its federally-backed mortgage and not due to the Section 8 vouchers. Plaintiff Celtic has not received any tax credits or other direct federal housing program support and does not participate in any other housing program listed in Section 4024(a)(2)(A) of the CARES Act. Plaintiff Celtic has not requested mortgage forbearance under Section 4023 of the CARES Act.

27.     Plaintiff Celtic is unable to even provide notice of its intention to begin eviction proceedings against these two tenants that appear to be taking advantage of the pandemic to

avoid paying rent. Section 4024(c)(2) of the Act specifically prohibits even sending notice during the purported moratorium. Even though there is no oversight or enforcement in the CARES Act for this moratorium provision, the Texas Supreme Court has specified in its Fifteenth Emergency Order Regarding the COVID-19 State of Disaster that no eviction proceeding may be filed in Texas unless the pleading certifies that "the premises are not subject to the moratorium on evictions imposed by Section 4024 of the CARES Act." Thus, as a direct result of Section 4024, Plaintiff Celtic has been denied access to the court system in the state of Texas.

### D. *Sole Basis for Moratorium Applying to Plaintiffs*

28. Neither Plaintiff has requested mortgage forbearance, so they do not fall under the moratorium in Section 4023 of the CARES Act. Mortgage forbearance is not a viable option for many small owners like the Plaintiffs. Unlike the PPP there is no forgiveness, so it merely delays mortgage payments which must then be fully paid after the forbearance ends. For an owner like the Plaintiffs of a single small property, any lost rent from units that do not pay rent yet cannot be evicted must be made up by rent increases on the remaining units in order to fully repay the delayed mortgage payments once the forbearance ends. Taking Sappington Garden as an example, with only sixteen units, each unit that goes without paying rent for an extended period of time due to the eviction moratorium would necessitate raising the rent on the remaining units by over 6.5%. Having to fully repay multiple delayed mortgage payments just magnifies the problem. In addition, there is no forbearance for costs like utilities, staff and maintenance.

29. Neither Plaintiff is significantly dependent on any of the federal programs listed in Section 4024(a)(2)(A). Plaintiff Celtic currently has only two tenants that receive rent assistance through Section 8 housing vouchers. These tenants are current in their rent, and are

not the two tenants facing possible eviction for failure to pay rent. Sappington Garden does not currently have any tenants using Section 8 vouchers to pay rent, but it has one tenant who has recently applied for assistance since the COVID-19 pandemic. Sappington Garden would like to help this tenant receive assistance and remain in the apartment. Neither Plaintiff received tax credits or any direct form of federal housing assistance, nor do they participate in any other federal housing program listed in Section 4024(a)(2)(A).

30. According to the published guidance from HUD, the sole basis for applying the eviction moratorium in Section 4024 against the Plaintiffs is the fact that their mortgages happen to be federally backed. Section 4024(a)(2)(B) defines any property that happens to have a federally-backed mortgage as a "covered property." There is nothing in the loan documents of either Plaintiff that in any way put the Plaintiffs on notice that by entering into the mortgage they were opening themselves to future regulatory demands by the Congress or the Defendants that would impair their access to Texas courts or their contractual rights to pursue eviction under the leases with their tenants. Unlike the moratorium in Section 4023 after an owner seeks mortgage forbearance, the moratorium in Section 4024 deprives an owner of income from units with non-paying tenants while still requiring them to pay their federally-backed mortgage and all other expenses in full.

## V.   THE SECTION 4024 MORATORIUM IS AN UNREASONABLE INTRUSION IN VIOLATION OF THE U.S. AND TEXAS CONSTITUTIONS

31. The Plaintiffs have existing contractual rights under the terms of their mortgage loan documents and their leases with their tenants. These contracts give the Plaintiffs the right to pursue eviction for non-payment of rent, and they do not permit the federal government to suspend that right. The moratorium in Section 4024 directly interferes with the contractual rights

11

of the Plaintiffs. This is an unconstitutional impairment of the right to contract protected by Article I, Section 10, Clause 1 of the United States Constitution

32. Section 4024's eviction moratorium also explicitly denies the Plaintiffs their right to access the Texas state courts. All Plaintiffs seek is access to the courts. It is entirely within the discretion of the Texas courts to ultimately decide whether or not eviction is appropriate. However, on its face Section 4024(b)(1) prohibits the Plaintiffs from even filing or causing to be filed eviction suits in Texas state courts. This denies the Plaintiffs access to due process, in violation of the Fifth Amendment to the United States Constitution. It is also a federal violation of the right guaranteed by the Open Courts provision of the due course of law in Article 1, Section 13 of the Texas Constitution.

33. By arbitrarily singling out Plaintiffs and depriving them of their contractual and legal rights to evict solely based upon the factual happenstance that their mortgages happen to have been backed by federal entities, their rights to equal protection of the laws under the 14th Amendment to the United States Constitution and equal rights under Article 1, Section 3 of the Texas Constitution have been denied. Those owners that do not have federally-backed mortgages retain their legal and contractual rights in relation to non-Section 8 tenants. Those owners who must pursue eviction for reasons other than non-payment of rent also retain their legal and contractual rights. It is unconstitutional for the Congress to single out owners that happen to have mortgages backed by federal entities and that need to pursue eviction for non-payment of rent. The Plaintiffs have not received forbearance or any other assistance from the federally-backed mortgages that would offset or justify a prolonged loss of rent without the right to pursue eviction.

34. By enacting the CARES Act moratorium, as written, Congress has violated both

the 10th Amendment and the separation of powers. Congress has no Constitutional authority to restrict filings in the state courts. Authority over Texas courts rests with the Texas Supreme Court and the Texas Legislature. There is no legal basis for Congress to issue what amounts to an anti-suit injunction to prohibit property owners from filing pleadings in state courts, or even providing notice of their intent to do so. In addition, Section 4024 of the CARES Act interferes with Texas law and procedure by imposing a 30-day notice requirement prior to filing eviction proceedings that does not exist under Texas law.

35. The moratorium in Section 4024 is not even enforceable as written. There is no provision in the CARES Act that assigns any official or entity enforcement, oversight, or supervision of the moratorium. While the Defendants are the primary officials tasked with implementing the other provisions in Article IV of the CARES Act, they were not given any responsibility in Section 4024. There is no provision providing any penalty or other consequence for proceeding with eviction, nor is there any provision in the Plaintiffs' federally-backed mortgages that would provide for contractual enforcement. This leaves Plaintiffs with no avenue to seek relief from the moratorium except this Court.

## VI. CAUSES OF ACTION

### A. Count One: Declaratory Judgments Sought

36. Plaintiffs hereby incorporate the allegations set forth above, all of which are fully re-alleged here.

37. Pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201(a) and 2202,[2] Plaintiffs request that the Court enter a judgment declaring and clarifying the rights and obligations of the parties under Section 4024 of the CARES Act and the Constitutions of the

---

[2] Such relief would also be available under Texas law. Tex. Civ. Prac. & Rem. Code § 37.004.

13

United States and the state of Texas.

38. There is a live case or controversy between the parties. This is a situation that is ongoing, but even if temporarily stopped is capable of repetition, but evading review.[3]

39. Plaintiffs and Defendants have fundamental disagreements regarding the interpretation and application of several provisions of the United States Constitution and Section 4024 of the CARES Act. A declaration from this court would resolve this controversy and provide the parties with certainty regarding their legal rights and obligations related to same.

40. Plaintiffs request that this Court issue the following declaratory relief:

a) Consistent with the guidance document published by HUD, the eviction moratorium in Section 4024 of the CARES Act based upon receipt of Section 8 housing assistance vouchers only applies to the tenants that hold those vouchers, and does not apply to any other units in the property.

b) Section 4024 of the CARES Act, on its face, impairs the obligation of contracts in violation of Article I, Section 10, Clause 1 of the United States Constitution.

c) Section 4024 of the CARES Act, on its face, violates the Plaintiffs' due process rights guaranteed by the 5th Amendment to the United States Constitution.

d) Section 4024 of the CARES Act, on its face, violates the open courts and due course of law guarantees in Article 1, Section 13 of the Texas Constitution.

e) Section 4024 of the CARES Act, on its face, violates the equal protection of laws guaranteed by the 14th Amendment of the United States Constitution.

---

[3] *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *Honig v. Doe*, 484 U.S. 305 (1988). While the moratorium is scheduled to expire after July 25, 2020, there are discussions in Congress about possibly extending the moratorium.

    f)  Section 4024 of the CARES Act, on its face, violates the equal rights protections guaranteed by Article 1, Section 3 of the Texas Constitution.

    g)  Section 4024 of the CARES Act, on its face, violates the 10th Amendment to the United States Constitution and the Separation of Powers doctrine because it amounts to improper interference by the U.S. Congress with state courts in Texas.

  41.  Plaintiff thus asks that the Court declare that the provision in Section 4024(a)(2)(B) of the CARES Act applying the moratorium on eviction proceedings for non-payment of rent to properties that have federally-backed mortgages is void and unenforceable.

###   B.  *Count Two: Request for Injunctive Relief*

  42.  Plaintiffs incorporate and re-allege as if fully set forth herein each and every allegation set forth above.

  43.  Plaintiffs also request that this Court, for the applicable grounds stated, enjoin and restrain Defendants from attempting to enforce the specific prohibition in Section 4024(c)(2) against sending any notice prior to eviction during the 120-day moratorium period.

  44.  Specifically, **Plaintiffs request the issuance of a temporary restraining order be issued at the earliest opportunity**, to be followed by a hearing and issuance of a preliminary injunction.

  45.  Injunctive relief is appropriate if Plaintiffs show:

   (1)  a substantial likelihood of success on the merits;

   (2)  a substantial threat of irreparable injury;

   (3)  outweighing any damage caused to the defendant; and

   (4)  no harm to the public interest.[4]

---

[4] *Janvey v. Aguirre*, 647 F.3d 585, 595 (5th Cir. 2011).

The analysis involves a "sliding scale …which takes into account the intensity of each [factor] in a given calculus."[5] "[T]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."[6]

### 1.   Plaintiffs Are Likely To Succeed On the Merits

46.   As set forth above, Plaintiffs are likely to succeed on the merits, because Section 4024 is unconstitutional under both the U.S. and Texas Constitutions.

47.   In particular, the prohibition against serving notice of intent to pursue eviction is a violation of Plaintiffs' contractual and Constitutional rights for which there is no public health or economic justification.  There is no indication that mailing a notice or posting a copy on the outside of an apartment door poses any health risk during the COVID-19 pandemic.  In fact, there has been no suspension or restriction of the U.S Postal Service during the pandemic.  There is also no economic impact or simply serving notice of an intent to begin legal proceedings to evict.  Notice alone imposes no economic hardship, especially when compared to the very real economic burden of depriving the owner of rent previously agreed to under the terms of the lease.

### 2.   Plaintiffs Will Suffer Irreparable Harm That Is Imminent

48.   In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."[7]  However, the availability of some economic damages does not always mean that a remedy at law is adequate.  For example, courts have found irreparable harm when a

---

[5] *Texas v. Seatrain Int'l. S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).

[6] *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975).

[7] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

16

meaningful decision on the merits would be impossible without an injunction.[8]  In this instance, Plaintiffs are without an avenue to have a hearing on the merits of an eviction without an injunction because the Section 4024 moratorium prohibits even sending notice of the intent to proceed as well as any court filing.  The only remedy for a denial of due process is an injunction affording due process.  Further, "[t]he absence of an available remedy by which the movant can later recover monetary damages . . . may also be sufficient to show irreparable injury."[9]  The deprivation of Plaintiffs' due process rights and access to the courts is by its very nature irreparable, as justice delayed is justice denied.  As justice is delayed in this case, unpaid rent is accumulating beyond the ability of the tenants to repay, thus putting any potential recovery out of reach.

### 3. The Balance of Harm Favors Injunctive Relief

49.    The relief sought by Plaintiffs Celtic and Sappington would not harm the Defendants, because they were not given any duties by Congress to enforce the CARES Act moratorium.  Nor would the requested injunctive relief harm the public interest because the only preliminary relief being requested is the ability to provide notice of intent to begin eviction proceedings.  As discussed above, there is no indication that mailing or posting a notice risks transmission of COVID-19.  Providing notice does not create harm to the public interest.  If injunctive relief is granted and Plaintiffs are allowed to provide notice to their tenants, they will still have to follow all of the legal procedures in Texas for an eviction proceeding so the tenants will have full due process protections.

---

[8] *Id.*

[9] *Enterprise Intern. Inc. v. Corporation Estatal Petrolera Ecuatoriana*, 762 F. 2d 464, 473 (5th Cir. 1985); *see also California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009) (holding that plaintiffs established irreparable harm because they could obtain no remedy against the state because of sovereign immunity).

50.     **Plaintiffs request the issuance of a temporary restraining order be issued at the earliest opportunity, prohibiting the enforcement of the specific prohibition against providing notice to tenants contained in Section 4024(c)(2) of the CARES Act.**

51.     Plaintiffs further request, after appropriate hearing, a preliminary injunction prohibiting the enforcement of Section 4024(c)(2) during the pendency of this suit.

52.     Should it be necessary, Plaintiffs further request a permanent injunction to support the declarations requested above prohibiting the enforcement of Section 4024 of the CARES Act.

53.     Plaintiffs are willing to post a reasonable bond for issuance of the temporary restraining order and preliminary injunction.  Because the requested injunctive relief does not cause any financial damage or incur any additional expenses to Defendant (or the tenants, for that matter), a bond in the amount of $100 would be reasonable, and Plaintiffs request the court to set such bond.

## VII.   CONDITIONS PRECEDENT

80.     All conditions precedent for Plaintiffs to recover in this action have been performed or have occurred.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Sappington Garden, LLC and Celtic Realty Acquisition, LLC pray that Defendants be cited to appear and answer herein.

Sappington and Celtic pray that this court issue a temporary restraining order and set a date and time for a hearing on this application for a preliminary injunction and that, after hearing, the court issue a preliminary injunction enjoining Defendants and their officers, agents, servants, employees, and attorneys during the pendency of this action, from directly or indirectly

18

attempting to enforce the prohibition in Section 4024(c)(2) of the CARES Act against sending notices of eviction.

Sappington and Celtic pray that upon a final hearing, a permanent injunction be entered that enjoins Defendants and their officers, agents, servants, employees, and attorneys from directly or indirectly attempting to enforce Section 4024 of the CARES Act.

Sappington and Celtic further pray that the Court declare that Section 4024(a)(2)(B) of the CARES Act is void and unenforceable. Sappington and Celtic further pray that the Court declare that Section 4024(a)(2)(A) of the CARES Act only imposes a moratorium on evictions proceedings in relation to those tenants participating in the federal housing program and does not extend to other units in the same property.

Plaintiffs pray for all other and further relief to which they are entitled at law or in equity.

Filed:   June 24, 2020

Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/  R. F. Johnson III
Robert F. Johnson III – Attorney in Charge
Texas State Bar No. 10786400
(512) 542-7127/542-7100 (fax)
rjohnson@foley.com
Edward D. ("Ed") Burbach
Texas State Bar No. 03355250
600 Congress Avenue, Suite 3000
Austin, Texas  78701
(512) 542-7070/542-7100 (fax)
eburbach@foley.com

Aaron E. Chibli
Texas State Bar No. 24091222
2021 McKinney Ave., Suite 1600
Dallas, Texas  75201
(214) 999-2013/999-4667 (fax)
achibli@foley.com

COUNSEL FOR PLAINTIFFS
SAPPINGTON GARDEN, LLC and
CELTIC REALTY ACQUISITION, LLC